UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CHRISTINA YVETTE SANDERS,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 17-cv-02902-RMI<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 25, 28 |

Plaintiff Christina Yvette Sanders seeks judicial review of an administrative law judge ("ALJ") decision denying her application for benefits under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. (Administrative Record ("AR") 1-6.) The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 5, 10) and both parties have moved for summary judgment. (Docs. 25, 28).[1] For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

---

[1] The Reply in this case was due no later than June 4, 2018. No Reply was filed.

error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

Plaintiff filed her initial application for Title II and Title XVI benefits on January 27, 2014, alleging an onset date of disability of July 15, 2012. (AR 188-200.) Plaintiff's application was initially denied on May 21, 2014. (AR 148-153.) Plaintiff filed a request for hearing with an ALJ on December 4, 2014. (AR 163.) A hearing was held on August 13, 2015. (AR 37-90.) The ALJ issued an unfavorable decision on November 5, 2015. (AR 10-29.) Plaintiff requested review by the Appeals Council on January 13, 2016. (AR 7-9.) The request for review was denied on March 20, 2017. (AR 1-6.)

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.1.[2] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will only cite to the SSI regulations herein unless noted otherwise.

2

the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (AR 10-29.)

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff met the insured requirement through June 30, 2015, and had not engaged in substantial gainful activity since July 15, 2012, her alleged onset date." (AR 15.)

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumber spine, obesity, depression, and anxiety. (AR 15-16.) The ALJ further found that Plaintiff suffered from the following non-severe medically determinable impairments: left foot pain, asthma, hypertension, hiatal hernia, gastroesophageal reflux disease, rectal bland polyps, abdominal pain due to uterine fibroids and hemorrhagic cysts, and an acute history of kidney stones. (AR 16.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id.* If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 16-18.)

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC")

1   and then determine whether the complaint has the RFC to perform the requirements of his past

2   relevant work. *See id*. § 416.920(e) and 416.945. The ALJ found Plaintiff had the RFC to perform

3   less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except

4   that Plaintiff could lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently;

5   stand, walk or sit for six hours in an eight-hour workday; occasionally climb ladders, ropes or

6   scaffolding; frequently climb stairs or ramps; frequently stoop, kneel, crouch or crawl; is restricted

7   to simple routine tasks and routine contacts with employers and co-workers; is limited to

8   occasional, superficial interaction with public; and no close interactions with public. (AR 18-23.)

9   At Step Five, the ALJ must determine whether the claimant is able to do any other work

10  considering her RFC, age, education, and work experience. *See id.* § 416.920(g). If the claimant is

11  able to do other work, she is not disabled. While the ALJ found that Plaintiff was not capable of

12  performing past relevant work, the ALJ alternatively relied on vocational expert ("VE") testimony

13  and identified other jobs that existed in the national economy that Plaintiff could perform,

14  including motel maid, marking clerk, and assembler of electronic accessories. (AR 24.) Thus, the

15  ALJ found Plaintiff not disabled from July 15, 2012, through the date of the ALJ decision. (AR

16  25.)

## DISCUSSION

Plaintiff's Mental Health Impairments

Plaintiff contends that the ALJ formulated an RFC that fails to account for all of Plaintiff's severe mental health impairments. With respect to those impairments, the ALJ found Plaintiff capable of performing simple routine tasks with routine contact with employers and coworkers, and only occasional superficial interaction with the public and no close interactions with the public. (AR 18-19.) Plaintiff argues that this RFC fails to account for limitations noted by the state agency doctors, the third party witnesses, and Plaintiff herself.

The state agency doctors noted that "stress from close interactions with the general public and from critical supervisors aggravates her mood-anxiety symptoms." (AR 99, 127.) The ALJ gave these opinions substantial weight and noted Plaintiff should have only routine contact with employers. (18-19, 22.) Plaintiff, however, claims that the RFC fails to account for Plaintiff's

inability to manage her symptoms in the face of criticism from supervisors. She claims that it is impossible to ensure that a worker will never be exposed to criticism in the workplace outside of placing them in a sheltered work environment, and that if Plaintiff is unable to effectively function outside a sheltered workshop, disability should be found.

The State agency doctors, Drs. Schumacher and Kang, indicated that Plaintiff's anxiety symptoms restricted her from sustaining difficult, three-to-four step work duties over extended periods but that she could complete routine, one-to-two step assignments for up to two hour intervals during a regular workday and workweek. (AR 98-99, 126-27.) They also indicated that although stress from close interactions with the general public and from critical supervisors aggravated her mood and anxiety symptoms, she could engage in routine contacts with co-workers and employers. (*Id*.) The ALJ's RFC assessment for routine contacts with co-workers and supervisors, as well as occasional and superficial contact with public and no close interactions with public, acknowledged and accounted for the State agency doctors' assessments. (AR 18-19.) Plaintiff provided no medical evidence indicating, as she now implies, that she is unable to effectively function outside a sheltered workshop. The court thus finds that substantial evidence supports the RFC finding on this point. (AR 19, 98-99, 126-27.)

In regard to third-party witnesses, the ALJ stated that he found their statements "generally credible" and "consistent with the overall record." (AR 23.) The ALJ then stated, "[h]owever, I find that these statements do not show limitations beyond those identified by the State agency psychological consultants as discussed above and included in the residual functional capacity set forth herein." *Id*. Plaintiff argues that the letters of her aunt, Pamela Holbrook; sister, Angela Chase-Cruse; and friend, Daniel Pruett, (AR 272, 273, 274) all describe Plaintiff as having more significant limitations that those set forth in the RFC. The court disagrees. As Defendant argues, the statements by the third parties simply confirmed that Plaintiff's depression was longstanding and that her symptoms caused situational stressors related to her childhood, common-law husband, and other issues unrelated to her mental impairments. (*Id*.) This is consistent with the ALJ's findings regarding Plaintiff's impairments. (AR 20-21.) The court finds that the ALJ's conclusions regarding the evidence from the three third-party witnesses were supported by

5

substantial evidence.

Finally, Plaintiff claims that the ALJ failed to account for Plaintiff's own reports of her social difficulties. Plaintiff cites her testimony, "I've got a big mouth and I'm angry and people piss me off." (AR 56.) She notes that she indicated that the stress of dealing with her previous job and the kind of boss she had put her over the edge. (AR 69.) She also testified that her ability to interact with people would vary depending on the amount of pain she was in: "I could do [light work], but I'll be like – like you said – you fight through it and I'm miserable and it's just going to make me bitchy and then everybody's going to have to deal with me." (AR 72.) Plaintiff argues that her testimony indicates that she has much more extensive social limitations than the ALJ found in the RFC, and that the ALJ gave no explanation for this.

As Defendant notes, only an ALJ is responsible for determining the RFC–not a doctor or Plaintiff. 20 C.F.R. §§ 404.1527(d), 404.1546; Social Security Ruling (SSR) 96-5p; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"). Thus, regardless of what Plaintiff believes her RFC should be, it is the ALJ's sole determination and must be upheld "if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation omitted).

In assessing the RFC, the ALJ reviewed Plaintiff's medical records, as well as considering statements from Plaintiff and the third party witnesses. (AR 20-21). The ALJ explained that Plaintiff alleged depression since 1997, sought treatment a year prior to her alleged onset date, and worked despite her history of ongoing depression and anxiety. (AR 20, 328, 332, 341, 343, 360, 365.) Plaintiff's work history despite her history of mental impairments since 1997 appropriately weighed against her allegations that she could not work due to her mental impairments. *See* 20 C.F.R. § 404.1529(a) (in assessing credibility, the agency considers the claimant's "efforts to work"); *Ruckdashel v. Colvin*, 672 Fed. App'x. 745, 745 (9th Cir. 2017)(unpublished) (ALJ properly discounted the claimant's description of symptoms and limitations because she had "worked full time with her impairments for several years without issue and her course of treatment was relatively conservative"). The ALJ also noted that Plaintiff's mental impairments were related

to social and situational stressors such as the loss of her job and resources, a broken car, and her sister having colon cancer. (AR 21, 328, 332, 349.) In addition, the ALJ reviewed the medical records that showed relatively normal mental-status examinations with normal attention span and concentration. (AR 21, 320, 325, 329, 334, 342, 443.) *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (ALJ properly relied on objective clinical findings, including that claimant was alert and oriented, maintained good eye contact, did not appear excessively anxious, spoke coherently and fluently, smiled appropriately, and was congenial, to find claimant's allegations of disabling anxiety not credible). The ALJ also observed Plaintiff's overall lack of consistent treatment, noting that while Plaintiff sought treatment in 2012, she had sporadic mental health treatment thereafter. (AR 21.) *See* 20 C.F.R. § 404.1529(c)(3)(iv); *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("ALJ is permitted to consider lack of treatment in his credibility determination"); *Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."); *Bubion v. Barnhart*, 224 Fed. App'x. 601, 604 (9th Cir. 2007) (unpublished) (ALJ properly considered "gaps" in claimant's treatment history). In addition, the ALJ also noted that medical records demonstrated that Plaintiff's depression was stable and well controlled and she showed no unusual evidence of anxiety or depression. (AR 21, 318, 344, 355, 358, 361, 368, 441, 469.) *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding that an impairment that can be controlled effectively is not disabling for social security purposes). Indeed, Plaintiff's last treatment record in 2015 indicated that she did not appear to have severe depression or anxiety. (AR 499.) Finally, as discussed above, the State agency doctors opined that even considering the stress and anxiety from the public and critical supervisors aggravated her symptoms, Plaintiff could engage in routine contacts with co-workers and supervisors. In light of all of these factors, the court finds that Plaintiff's testimony did not diminish the substantial evidence before the ALJ which supports the RFC determination. The court finds no error.

Development of the Record

Plaintiff contends that the ALJ erred in failing to properly develop the record. She argues

7

specifically that the record before the ALJ was inadequate to allow for the proper formulation of an accurate RFC. Plaintiff stresses that the only opinion evidence was provided by the State agency evaluating doctors, who reviewed the file in May and November of 2014, and had no consultative exams on which to rely. (AR 91-102, 117-30.) She argues that the initial and reconsideration determinations were made on a limited record, because the ALJ had no current assessments of Plaintiff's functional abilities. Plaintiff further argues that the record documents her on-going difficulty accessing care due to her lack of finances, uninsured status, and her remote location. Plaintiff argues that this accounts for her limited treatment record and the lack of opinion evidence from a treating source. (AR 60-61, 335, 337, 499.) Plaintiff concludes that the ALJ should have ordered consultative psychological and physical exams to generate a basis for the RFC.

The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). A consultative examination should be requested when the evidence as a whole is insufficient to support a decision on a claimant's claim. 20 C.F.R. § 404.1519a(b)(1). The regulations specifically note that a consultative examination should be purchased when additional evidence is needed which is not in the medical record; there is a conflict, inconsistency, ambiguity or insufficiency in the evidence which must be resolved; or when there is an indication that there is a change in a claimant's condition which is likely to affect their ability to work. 20 C.F.R. § 404.1519a.

As Defendant argues, the ALJ's duty to develop the record exists in limited circumstances, specifically when the record is ambiguous or inadequate to make a determination. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"), citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The record before the ALJ indicated that Plaintiff was treated for her anxiety and depression from 2011 to 2015. Further, the record indicated that Plaintiff's depression was stable

8

and well-controlled and she showed no unusual evidence of anxiety or depression (AR 21, 318, 344, 355, 358, 361, 368, 441, 469). In addition, as the ALJ noted, there was no contradictory opinion by any treating physician. (AR 22.) *See* 20 C.F.R. § 404.1520b(a) ("If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence.").

Although Plaintiff argues that the State agency doctors only relied on medical evidence until 2014, Plaintiff points to no evidence that would have indicated she had a severe mental impairment in 2015, other than the third party evidence and Plaintiff's own testimony discussed above. To the contrary, the record demonstrates that in 2015 Plaintiff did not appear to have severe depression or anxiety. (AR 499.) Even if she had previous difficulty with insurance or costs of medications, there is no indication that she had any current problems with insurance or accessing care. In fact, the record demonstrates that she canceled her psychiatric referral because she could not be seen quickly. (AR 499.) Thus, the court finds that Plaintiff has not demonstrated that this is a case where there was ambiguous evidence or when the record was inadequate to allow for proper evaluation of the evidence. Under these circumstances, it was unnecessary for the ALJ to obtain additional evidence from a consultative examination.

## CONCLUSION

Based on the foregoing and after considering all of the parties' arguments, the court finds that Plaintiff has not shown either a lack of substantial evidence to support the ALJ's decision, or an error in the decision. Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: August 10, 2018

ROBERT M. ILLMAN
United States Magistrate Judge